UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK WOODRUFF, individually and on behalf of all others similarly situated,<br><br>v.<br><br>KAISER ALUMINUM CORPORATION | Case No. _____<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action<br><br>Jury Trial Demanded |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Kaiser's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Kaiser's organization.

3. As a result, Kaiser's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4. Mark Woodruff is one such Kaiser worker.

5. Kaiser could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Kaiser pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. Kaiser made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. After significant delay, Kaiser made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9. Kaiser's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Kaiser's failure to pay wages, including proper overtime, for all hours worked to its workers in Indiana also violates the Indiana Minimum Wage Law (IMWL), I.C. § 22-2-2 *et seq.*, and the Indiana Wage Payment Statute (IWPS), I.C. § 22-2-5 *et seq*.

11. Woodruff brings this lawsuit to recover these unpaid overtime wages and other damages owed by Kaiser to him and Kaiser's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Kaiser's decision to make its own non-exempt employees bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Kaiser to all these workers, as occasioned by the unpaid wages, along with exemplary damages, penalties, interest, and other remedies provided by federal and Indiana law.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Kaiser is headquartered in this District.

## PARTIES

16. **Plaintiff Mark Woodruff** is a natural person.

17. Woodruff was, at all relevant times, an employee of Kaiser.

18. Woodruff has worked for Kaiser since April 2021.

19. Woodruff worked for Kaiser in Indiana.

20. Woodruff represents at least two groups of similarly situated Kaiser workers.

21. Woodruff represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Kaiser (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Woodruff represents a class of similarly situated workers under Indiana law pursuant to Federal Rule of Civil Procedure 23. This "Indiana Class" is defined as:

> **All current or former non-exempt employees of Kaiser (including its subsidiaries and alter egos) who worked in Indiana at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members and Indiana Class members are referred to jointly as the "Similarly Situated Workers."

24. **Defendant Kaiser Aluminum Corporation ("Kaiser")** is a foreign corporation.

25. Kaiser is headquartered in this District.

26. Kaiser may be served by service upon its registered agent, **CT Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546**, or by any other method allowed by law.

27. Kaiser's subsidiaries and alter egos include, but are not limited to:

- Kaiser Aluminum Fabricated Products, LLC
- Kaiser Aluminum Investments Company
- Kaiser Aluminum Warrick, LLC

28. At all relevant times, Kaiser exerted operational control over its subsidiaries and alter egos.

29. At all relevant times, Kaiser substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

30. At all relevant times, Kaiser had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

31. Kaiser employed and/or jointly employed, with its subsidiaries and alter egos, Woodruff and the Similarly Situated Workers.

32. Kaiser and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

33. Kaiser and its subsidiaries and alter egos are joint employers for purposes of Indiana law.

34. Throughout this Complaint, Kaiser and its subsidiaries and alter egos are referred to jointly as "Kaiser."

## COVERAGE UNDER THE FLSA

35. At all relevant times, Kaiser was an employer of Woodruff within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all relevant times, Kaiser was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37. Kaiser was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

38. During at least the last three years, Kaiser has had gross annual sales in excess of $500,000.

39. Kaiser was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

40. Kaiser employs many workers, including Woodruff, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

41. The goods and materials handled, sold, or otherwise worked on by Woodruff and other Kaiser employees and that have been moved in interstate commerce include, but are not limited to, metals and metalworking supplies and equipment.

## FACTS

42. Kaiser produces semi-favricated aluminum products. Kaiser, Our Company, https://www.kaiseraluminum.com/about-us/our-company/ (last visited May 8, 2022)

43. Kaiser operates 13 production facilities in the United States. Kaiser, Facilities, https://www.kaiseraluminum.com/about-us/facilities/ (last visited May 8, 2022)

44. Many of Kaiser's employees are non-exempt hourly and salaried workers.

45. Since at least 2021, Kaiser has used timekeeping software and hardware operated and maintained by Kronos.

46. On or about December 11, 2021, Kronos was hacked with ransomware.

47. The Kronos hack interfered with the ability of its customers, including Kaiser, to use Kronos's software and hardware to track hours and pay employees.

48. For at least a portion of time following the Kronos hack, Kaiser failed to keep accurate track of the hours that Woodruff and Similarly Situated Workers worked.

49. Instead, Kaiser has used various methods to estimate the number of hours Woodruff and Similarly Situated Workers work in each pay period.

50. For example, Kaiser issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

51. As a result of Kaiser's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

52. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

53. Woodruff is one of the thousands of employees affected by these pay and timekeeping practices.

54. Instead of paying Woodruff for the hours he actually worked (including overtime hours), Kaiser simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Woodruff's actual hours worked and regular pay rates, in multiple workweeks.

55.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

56.     Kaiser knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

57.     Kaiser knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

58.     Kaiser could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

59.     Instead of accurately tracking hours and paying employees their overtime, Kaiser decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

60.     It was feasible for Kaiser to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

61.     But Kaiser chose not to do that.

62.     In other words, Kaiser pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

63.     Woodruff is just one of the many Kaiser employees who had to shoulder the burden of this decision by Kaiser.

64. Woodruff was a non-exempt hourly employee of Kaiser.

65. Woodruff regularly worked over 40 hours per week for Kaiser.

66. Woodruff's normal, pre-Kronos hack hours are reflected in Kaiser's records.

67. Since the Kronos hack, Kaiser has not timely paid Woodruff for his actual hours worked each week.

68. Since the hack took place, Kaiser has not been accurately recording the hours worked by Woodruff and its other workers.

69. Kaiser was aware of the overtime requirements of the FLSA.

70. Kaiser nonetheless failed to timely pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Woodruff.

71. Kaiser's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

72. The full overtime wages owed to Woodruff and the Similarly Situated Workers became "unpaid" when the work for Kaiser was done—that is, on Woodruff and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

73. At the time Kaiser failed to pay Woodruff and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Kaiser became liable for all prejudgement interest, liquidated damages, penalties, and any other damages owed under the law.

74. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

75. Any payment made by Kaiser to Woodruff or the Similarly Situated Workers that Kaiser may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

76. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

77. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Kaiser's acts and omissions resulting in the unpaid wages in the first place.

78. Woodruff and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Kaiser under federal and Indiana law, and are due liquidated damages, interest, and/or exemplary damage or penalties thereunder.

## COLLECTIVE ACTION ALLEGATIONS

79. Woodruff incorporates all other allegations.

80. Numerous individuals were victimized by Kaiser's patterns, practices, and policies, which are in willful violation of the FLSA.

81. Based on his experiences and tenure with Kaiser, Woodruff is aware that Kaiser's illegal practices were imposed on the FLSA Collective.

82. The FLSA Collective members were not timely paid their full overtime premiums for all overtime hours worked.

83. These employees are victims of Kaiser's respective unlawful compensation practices and are similarly situated to Woodruff in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

84. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

85. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

86. Kaiser's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

87. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

88. Woodruff incorporates all other allegations.

89. The illegal practices Kaiser imposed on Woodruff were likewise imposed on the Indiana Class members.

90. Numerous other individuals who worked for Kaiser were were not properly compensated for all hours worked, as required by Indiana law.

91. The Indiana Class is so numerous that joinder of all members of the class is impracticable.

92. Kaiser imposed uniform practices and policies on Woodruff and the Indiana Class members regardless of any individualized factors.

93. Based on his experience and tenure with Kaiser, as well as coverage of the Kronos hack, Woodruff is aware that Kaiser's illegal practices were imposed on the Indiana Class members.

94. Indiana Class members were all not timely paid proper overtime when they worked in excess of 40 hours per week.

95. Kaiser's failure to pay wages and overtime compensation in accordance with Indiana law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Indiana Class members.

96. Woodruff's experiences are therefore typical of the experiences of the Indiana Class members.

97. Woodruff has no interest contrary to, or in conflict with, the members of the Indiana Class. Like each member of the proposed class, Woodruff has an interest in obtaining the unpaid wages and other damages owed under the law.

98. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99. Absent this action, many Indiana Class members likely will not obtain redress of their injuries and Kaiser will reap the unjust benefits of violating Indiana law.

100. Furthermore, even if some of the Indiana Class members could afford individual litigation against Kaiser, it would be unduly burdensome to the judicial system.

101. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

102. The questions of law and fact common to each of the Indiana Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

 a. Whether Woodruff and the Indiana Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

 b. Whether Kaiser's failure to pay Woodruff and the Indiana Class members their proper overtime rates overtime violated the IMWL;

 c. Whether Kaiser paid Woodruff and the Indiana Class members all wages due within the period of time allowed by the IWPS;

 d. Whether Kaiser's failure to timely pay wages to Woodruff and the Indiana Class members violated the IWPS.

103. Woodruff's claims are typical of the Indiana Class members. Woodruff and the Indiana Class members have all sustained damages arising out of Kaiser's illegal and uniform employment policies.

104. Woodruff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

105. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### First Cause of Action—Overtime Violations of the FLSA as to Woodruff and the FLSA Collective

106. Woodruff incorporates all other allegations.

107. By failing to pay Woodruff and the FLSA Collective members overtime at 1.5 times their regular rates, when such payments were due, Kaiser violated the FLSA. 29 U.S.C. § 207(a).

108. Kaiser owes Woodruff and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

109. Likewise, Kaiser owes Woodruff and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

110. Kaiser knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

111. Because Kaiser knew or showed reckless disregard for whether its pay practices violated the FLSA, Kaiser owes these wages for at least the past three years.

112. Kaiser's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

113. Due to the delay in paying wages due under the FLSA, Kaiser owes Woodruff and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

114. Accordingly, Woodruff and the FLSA Collective members are entitled to full payment of their overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO WOODRUFF AND THE INDIANA CLASS

115. Woodruff incorporates all other allegations.

116. The conduct alleged in this Complaint violates the IMWL, I.C. § 22-2-2-1 *et seq.*

117. At all relevant times, Kaiser has been an "employer" within the meaning of the IMWL. I.C. § 22-2-2-3.

118. At all relevant times, Kaiser employed Woodruff and the other Indiana Class members as "employees" within the meaning of the IMWL. I.C. § 22-2-2-3.

119. At all relevant times, Kaiser employed two or more employees each week.

120. The IMWL requires an employer like Kaiser to pay employees at a rate no less than the minimum wage for each hour worked. I.C. § 22-2-2-4(c).

121. As a result of Kaiser's failure to pay Woodruff and the Indiana Class at a rate no less than the minimum wage for all hours worked, Kaiser violated the IMWL.

122. The IMWL requires an employer like Kaiser to pay overtime to all non-exempt employees. I.C. § 22-2-2-4(f).

123. Woodruff and the other Indiana Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate. I.C. § 22-2-2-4(f).

124. Within the applicable limitations period, Kaiser had a policy and practice of failing to pay proper overtime to the Indiana Class members for their hours worked in excess of 40 hours per week.

125. As a result of Kaiser's failure to pay proper overtime to Woodruff and the Indiana Class members for work performed in excess of 40 hours in a workweek, Kaiser violated the IMWL.

126. Likewise, Kaiser owes Woodruff and the Indiana members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

127. The IMWL requires an employer like Kaiser to furnish each employee at each pay period an accurate statement containing: the hours worked by the employee, the wages paid to the employee, and a listing of any deductions made. I.C. § 22-2-2-8(a).

128. Within the applicable limitations period, Kaiser had a policy and practice of failing to provide their employees with the wage statements required by the IMWL.

129. As a result of Kaiser's failure to provide the wage statements required by the IMWL, Kaiser violated the IMWL.

130. Woodruff and the Indiana Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the IMWL. I.C. § 22-2-2-9.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE IWPS AS TO WOODRUFF AND THE INDIANA CLASS

131. Woodruff incorporates all other allegations.

132. The conduct alleged in this Complaint violates the IWPS, I.C. § 22-2-5 *et seq.*

133. At all relevant times, Kaiser has been an "employer" within the meaning of the IWPS.

134. At all relevant times, Kaiser employed Woodruff and the Indiana Class members as "employees" within the meaning of the IWPS.

135. Kaiser failed to pay earned wages and overtime to Woodruff and the Indiana Class Members.

136. Kaiser failed to pay the wages earned by Woodruff and the Indiana Class members within 10 business days. I.C. § 22-2-5-1(b).

137. Kaiser had a policy and practice of failing make timely payemnts to the Woodruff and the Indiana Class members.

138. Kaiser did not act in good faith in failing to pay earned wages to Woodruff and the Indiana Class members and in violating the IWPS.

139. As a result of Kaiser's failure to pay earned wages to Woodruff and the Indiana Class members within the time required by the IWPS, Kaiser violated the IWPS.

140. Woodruff and the Indiana Class members are entitled to recover all wages due to them, liquidated damages in an amount equal to 2x of the wages due to them, attorneys' fees, costs, and all other legal and equitable relief provided under the IWPS. I.C. § 22-2-5-2.

### JURY DEMAND

141. Woodruff demands a trial by jury on all issues.

### RELIEF SOUGHT

Woodruff prays for judgment against Kaiser as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order certifying a class action for the Indiana law claims;

c. For an order finding Kaiser liable for violations of federal wage laws with respect to Woodruff and all FLSA Collective members covered by this case;

d. For an order finding Kaiser liable for violations of Indiana wage laws with respect to Woodruff and all Indiana Class members covered by this case;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Woodruff and all FLSA Collective members covered by this case;

f. For a judgment awarding all unpaid wages, and exemplary damages under Indiana wage laws to Woodruff and all Indiana Class members covered by this case;

g. For an equitable accounting and restitution of wages due to Woodruff and all FLSA Collective and Indiana Class members members covered by this case;

h. For a judgment awarding attorneys' fees to Woodruff and all FLSA Collective and Indiana Class members covered by this case;

i. For a judgment awarding costs of this action to Woodruff and all FLSA Collective and Indiana Class members covered by this case;

j. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Woodruff and all FLSA Collective and Indiana Class members covered by this case; and

k. For all such other and further relief as may be necessary and appropriate.

Date: <u>May 9, 2022</u>  Respectfully submitted,

By: <u>/s/ Kimberly De Arcangelis</u>
**Kimberly De Arcangelis, Esq.**
Florida Bar No.: 0025871
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 867-4791
Email: kimd@forthepeople.com
*Court Admittance Forthcoming*

R. Burke Keaty, II, BPR#027342
**MORGAN & MORGAN – NASHVILLE, PLLC**
801 Broadway, Suite 105
Nashville, TN 37203
(615) 514-4205
bkeaty@forthepeople.com
*Local 83.01(d) Counsel for Plaintiff*

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law
*Court Admittance Forthcoming*

**Attorneys for Plaintiff**